**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN GONZALES,** | § | |
| | § | |
| **v.** | § | **NO.  A-05-CA-977-AWA** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION.** | § | |

<u>**MEMORANDUM OPINION & ORDER**</u>

Before the Court are Plaintiff's Brief (Clerk's Doc. No. 7);  Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 9); and the Social Security Record filed in this case (Cited as "Tr.").

**I. PROCEDURAL HISTORY**

Plaintiff John Gonzales ("Plaintiff") filed for Disability Insurance Benefits ("DIB") on May 19, 2003.  He was denied benefits initially and again on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on April 12, 2005.  On July 27, 2005, the ALJ denied Plaintiff's claim.  The Appeals Council denied his request for review on September 21, 2005.  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

**II. ISSUES PRESENTED**

Plaintiff contends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence and is not based upon the proper legal standards.  Specifically, Plaintiff raises the following issues: 1) the ALJ must either grant or deny his request for more medical evaluations; 2) the evidence does not demonstrate that he retained

the residual functional capacity to perform his past relevant work; 3) the ALJ failed to properly evaluate the treating physicians' opinions; and 4) the ALJ failed to properly evaluate Plaintiff's credibility.

### III. STATEMENT OF THE CASE

Plaintiff contends he has been unable to engage in substantial work activity since March 13, 2001, due to residual problems stemming from a back injury. Plaintiff was represented at the hearing by an attorney. A vocational expert testified at the hearing.

**A.    Plaintiff's Testimony**

Plaintiff testified that he was born on October 6, 1961, and is 44 years of age. Tr. 229. He lives with his wife, stepdaughter, and grandchild. Tr. 235. As for his educational background, he completed the tenth grade. Tr. 230.

Plaintiff testified that he worked as a heavy equipment operator, performed construction work, worked as a contractor, and sold automobile accessories. Tr. 230-232. Plaintiff stated he had not worked since March of 2001. Tr. 229. Plaintiff did receive "a little earnings" in 2002, however, he was almost entirely supported financially by his family. *Id.* Plaintiff testified that he took part in the physical aspect of construction work throughout his construction career. Tr. 231. As a sales representative in an automotive business Plaintiff worked at a desk taking orders for batteries and tune-ups and other things of that nature. *Id.*

Plaintiff testified that in 1996 he had a heat stroke, started having constant headaches, and began experiencing problems with his vision. Tr. 232. Plaintiff stated that the headaches were still occurring once or twice a day and lasted from two to four hours. Tr. 244. Plaintiff also testified that in 1996 he "started having problems going toward my shoulders, my whole body straight down." Tr.

232.  He explained that his legs started going numb in 2002. Tr. 233.  As a result, he had back surgery in 2003, which relieved his pain for about one year. *Id.*  However, he re-injured his back working in the yard, resulting in problems with his back, legs, knees, ankles, and heels. *Id.* He described the pain as sharp and constant, going up and down his body. *Id.*

He does not help with any of the housework, because he stated he "cannot do anything." Tr. 236.  Plaintiff occasionally accompanies his wife to the grocery store but usually has to ride an electric wheelchair after a while. *Id.*  Plaintiff used a cane because he explained his legs just fall out from under him sometimes, but he testified that the cane was not prescribed to him. Tr. 235, 241.

Plaintiff alleged that he can only sit for about 20-30 minutes without needing to stand up. Tr. 237.  Plaintiff asserted that if he has to sit for a long time he cannot sit with his feet on the ground but instead has to stretch out and have his feet elevated. Tr. 242.  Plaintiff stated that he can only stand for five to ten minutes before he needs to sit again. Tr. 237.  He has trouble walking but tries to walk up the stairs or outside for ten to fifteen minutes a day. *Id.*  He also testified that he did not know how much weight he could lift, however, he stated that he could lift a gallon of milk but not a 20-pound bag of dog food. Tr. 237, 238.  Plaintiff explained that his hands feel tingly or numb quite often, so he sometimes had difficulty using his hands, and has dropped glasses while trying to hold them. Tr. 243.

Plaintiff also testified to having trouble dressing himself, because bending over is difficult for him. Tr. 238.  Bathing is also a problem for Plaintiff because he has trouble getting in and out of the tub. *Id.* Plaintiff then volunteered that he is sometimes constipated, and cannot "hold my bowels." *Id.*  Plaintiff was taking extra strength Tylenol, Tylenol PM, Motrin, and Frutonix for acid reflux. Tr. 235, 238.

3

**B.**      **Vocational Expert Testimony**

Dr. Vander-Molen, a vocational expert ("V.E."), testified at the April 14, 2005 hearing. Tr. 244. The V.E. testified that Plaintiff's previous job as an automobile accessories sales person is rated as light and semi-skilled. Tr. 245. The V.E. classified Plaintiff's work as a construction worker as heavy and semi-skilled. *Id*. Plaintiff's job as a contractor was rated as light and skilled, however, since Plaintiff also worked on the sites where he operated as contractor, the position was rated as heavy and skilled. *Id*. Plaintiff's job as a heavy equipment operator is considered medium and skilled. *Id*.

**C.**      **Medical Records**

The following is a summary of Plaintiff's medical records that are relevant to the issues presented in the instant case. The relevant time period is from March 13, 2001, the alleged onset of Plaintiff's disability, through July 27, 2005, the date of the final administrative decision in the case. Thus, Plaintiff must demonstrate that he was under a disability on or before July 27, 2005, in order to receive benefits.

Plaintiff had an MRI performed on February 20, 2002 because of alleged right sciatica, which revealed a herniated disc. Tr. 184. Dr. Cressman examined Plaintiff and found that he was alert, cooperative, rational, could walk without a cane, walk on his heels or toes, and hop on one foot without evidence of weakness. Tr. 180-181. However, those maneuvers did produce pain. Tr. 181. Dr. Cressman recommended surgery as Plaintiff's best chance to gain relief. Tr. 180.

On March 13, 2002, Plaintiff underwent surgery to excise the disc. Tr. 182. Plaintiff's surgery went well and all excess material was removed. *Id.* Plaintiff returned to Dr. Cressman on April 15, 2002 for a follow up visit. Tr. 178. Dr. Cressman reported that Plaintiff was doing "very,

4

very well." *Id.*  Plaintiff could walk on his heels or toes and hop on one foot without evidence of weakness or pain. *Id.* Furthermore, Plaintiff's range of motion increased, and his gait was normal. *Id.*  Plaintiff felt slight pain/tightness when performing a small number of movements, but Plaintiff tested "normal" on most movement, and after a few more visits Plaintiff was doing well in almost every area. Tr. 178, 176.  On July 12, 2002, Plaintiff was swimming and walking regularly and allowed to only return to the doctor as needed. Tr. 176.

Plaintiff went to Dr. Cressman on November 15, 2002, complaining of lower back pain that developed after working in the yard. Tr. 175.  Dr. Cressman recommended a physiotherapy program because there was no sciatica and Plaintiff generally felt better while being active. *Id.*

Dr. Robison conducted a consultative examination on September 18, 2003, where he noted that Plaintiff's range of motion was somewhat limited by pain. Tr. 167-69. Dr. Novin also evaluated Plaintiff's record on October 6, 2003, and found his impairment to not be severe. Tr. 165.  Dr. Novin concluded since there was no evidence of ongoing treatment or significant clinical findings, Plaintiff's credibility should be questioned. *Id.*  Dr. Heck pointed out that Plaintiff's neurological examination was normal except light touch sensation in both feet. Tr. 164.  Plaintiff also has no history of headache or treatment for headache. *Id.*  Dr. Heck further described Plaintiff's complaint of headaches to not be medically-determinable. *Id.*

Plaintiff went to Dr. Morrison at Scott & White on February 6, 2004, claiming that for the past year he had experienced increasing pain and discomfort in his lower back. Tr. 172.  Dr. Morrison recommended intensive physical therapy, Tylenol Extra Strength, and continued medication for gastroesophageal reflux. Tr. 173.

On March 11, 2004 a functional capacity assessment was performed on Plaintiff. Tr. 156. In his assessment, Dr. Pontiero determined that Plaintiff has no postural, manipulative, visual, communicative, or environmental limitations. Tr. 158-160.  Dr. Pontiero also determined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds; stand/walk about six hours in an eight hour workday; and sit for six hours in an eight hour workday. *Id.*  Dr. Pontiero's assessment also determined that Plaintiff's ability to push and/or pull was unlimited other than as shown for lifting and carrying. *Id.*

On June 11, 2004, the doctor at Scott & White noted Plaintiff's complaints of "all over body pain" which includes knees, shoulders, back, and feet. Tr. 208.  The medical record shows that Plaintiff started physical therapy but did not follow up after the first two visits. *Id.*  The doctor at Scott & White felt Plaintiff might have myofascial pain syndrome. *Id.*

After attending three physical therapy sessions in a month, Plaintiff reportedly felt less pain. Tr. 222.  After ten visits in two months to Hands on Physical Therapy, Plaintiff reported that he felt the therapy was helping. Tr. 216.  Therapy lowered the occurrence of the alleged headaches to twice a week, and decreased the frequency of radiating pain in Plaintiff's legs to the afternoon and evening instead of all day. *Id.*  The physical therapist recorded that Plaintiff was making slow steady progress and would benefit from continued skilled physical therapy. *Id.*

## IV. FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, consideration of the vocational expert's testimony, as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ found that Plaintiff has severe medical impairments of degenerative joint

disease and arthralgias, but that such impairments did not meet the Listing of Impairments in the regulations.  Tr. 18.

The ALJ concluded that Plaintiff's allegations regarding his limitations were not credible. Tr. 19.  Although the state agency doctor determined that Plaintiff could perform a full range of medium work, because of Plaintiff's pursuit of medical care for his back pain in 2004, physical therapy, and increased pain with vigorous activity in November of 2002, the ALJ found Plaintiff could perform no more than light work.  Tr. 21.  The ALJ found Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, and stand, sit, and walk 6 out of 8 hours in a day.  *Id.* The ALJ noted that his conclusion was different than that of the state agency doctor because he had more medical evidence and interpreted the evidence differently.  *Id.*  The ALJ determined Plaintiff could perform his past relevant work as an automobile accessories salesperson.  *Id.*  Accordingly, the ALJ found that Plaintiff was not "disabled" as within the meaning of the Act.  *Id.*

## V. STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions

of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the  reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174.  If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## VI. ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To determine disability, the Commissioner uses a five-step analysis.  The first two steps involve determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).  In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. *Id*.  If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. *Id*.

If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. *Myers*, 238 F.3d at 619.  At these steps, the analysis is made of whether the person can do his

8

own past work or any other work that exists in the national economy, in view of the claimant's age, education, and work experience.  *Id*.  If the claimant cannot do his past work or other work, the claimant qualifies for benefits.  *Id*.  The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step, if it is reached.  *Id*.  If at the fourth step, the ALJ determines that the claimant is capable of doing his past relevant work, there is no disability. *See* 20 C.F.R. § 404.1520; *Frazier v. Chater*, 903 F.Supp. 1030, 1034 (N.D. Tex. 1995).

The ALJ found Plaintiff not disabled based on the fourth step.  The ALJ determined that Plaintiff was able to perform his past relevant work as an automobile accessories salesperson. Tr. 22.  The Court finds that based upon the evidence in the record before the ALJ, the ALJ's determination was based upon substantial evidence.

**A.      Was the ALJ Required to Order Additional Medical Evidence to Evaluate Plaintiff's Alleged Learning Impairment?**

Plaintiff argues that he repeatedly requested that he be sent for an evaluation of his learning impairments, and since his request was not acted upon by the ALJ or Appeals Council, the case should be remanded so that his request can be granted or denied.  Defendant responds that the ALJ had no duty to request an evaluation of Plaintiff's alleged learning disability.

The plaintiff has the burden to provide evidence of disabilities from which the ALJ can make a determination.  If such evidence is not provided, the ALJ will make decision based on the evidence in the record.  *See* 20 C.F.R. § 404.1516;  *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). An ALJ can, in his discretion, order a consultative examination, however, an examination at the expense of the government is not required unless the medical record reveals that such an examination is necessary for the ALJ to reach a determination regarding disability.  *Id.*  "It  must  be  remembered

9

that '[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'" *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988), quoting, *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

There is no evidence in the medical record showing Plaintiff has a learning disability.  The only times a potential learning disability is mentioned in the record are in Plaintiff's requests for such an evaluation in which Plaintiff's attorney states that "she observed that he could not comprehend what he read, can't focus, can't write well, can't comprehend questions asked of him, doesn't always pay attention according to his wife, has a limited ability to speak in English."  Tr. 9-12, 139-43.  However, Plaintiff testified that he could read, write, add, and subtract, and had no obvious difficulty answering the ALJ's questions.  Tr. 230.  During Plaintiff's attorney's examination, she never asked any questions about any alleged learning disabilities and none of the doctors who examined him reported any such disability.  Thus, the ALJ was under no obligation to order such an examination.

Even if this Court were to conclude that the ALJ and Appeals Council should have responded to Plaintiff's request, courts reviewing ALJs' decisions should not remand a decision unless the substantial rights of a party have been affected.  *Anderson*, 887 F.2d at 634.  Since there was no evidence in the medical record of a learning disability, Plaintiff did not testify that he had such a problem, and no learning ability was brought to the attention of the ALJ, there was no reason for the ALJ to have ordered such a test.  Thus, the failure to order an examination of any possible learning disabilities is not a basis for remand.

**B.**     **Did Substantial Evidence Demonstrate that Plaintiff Retained the Residual Functional Capacity to Perform his Past Work?**

Plaintiff contends the ALJ erred in determining that Plaintiff could perform his past relevant work.  Defendant asserts that the ALJ's decision was supported by substantial evidence.

An ALJ is in the best position to determine if a plaintiff's subjective complaints are exaggerated and not credible, especially if the ALJ finds the medical evidence more persuasive than a plaintiff's own testimony. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  Additionally, determining a plaintiff's residual functional capacity is the ALJ's responsibility.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1994).  The ALJ has the authority and duty to weigh the evidence and reach any conclusion that is supported by substantial evidence.  *Holman v. Massanari*, 275 F.3d 43, 43 (5th Cir. 2001); *Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir. 1987).

The ALJ concluded that Plaintiff's allegations regarding his limitations were not credible.  Tr. 19.  Although Plaintiff alleged his disability started in 2001, the ALJ noted that there was no evidence that Plaintiff regularly received medical care during 2001.  *Id.*  The ALJ stated the fact that Plaintiff experienced a sudden increase in pain and the comparison of the MRI from 1999 and 2002 supports a conclusion that Plaintiff had a musculoskeletal impairment that gradually deteriorated. *Id.*  The ALJ stated that the medical record indicates Plaintiff's symptoms improved substantially after his surgery, so he was not precluded from working for 12 months as required for a disability finding.  *Id.*  The ALJ noted that Plaintiff's testimony that he felt better when he laid down and kept his feet elevated by sitting contradicted what Plaintiff told Dr. Cressman in November of 2002, because he said he felt better when he was active.  *Id.*  The ALJ noted that comparison of the medical records from November of 2002 to October of 2003 do not show a significant change in his

11

functional abilities. *Id.* Even though Plaintiff reported increased lower back pain in February 2004, the ALJ noted that Plaintiff demonstrated no new symptomology upon examination and that the examining doctor recommended Plaintiff continue to use over-the-counter Tylenol for his pain, so Plaintiff's reported limitations were not consistent with the record. *Id.* The ALJ also pointed out that there was no objective evidence that Plaintiff needed a cane, had the frequency and degree of headaches he alleged, had urinary incontinence, or that his work would be more than minimally affected by acid reflux. Tr. 20-21.

As the ALJ indicated, there is no evidence that Plaintiff pursued or required ongoing medical care. Tr. 19. Furthermore, a consultative physician, Dr. Novin, stated that the medical evidence did not indicate significant clinical findings, and concluded that Plaintiff's musculoskeletal system impairments were non-severe and Plaintiff's credibility must be questioned. Tr. 165. Plaintiff asserts that, on page 172 of the record, Dr. Morrison at Scott & White stated that Plaintiff was unable to work, however, the Court reviewed this document, and the doctor gives no opinion as to Plaintiff's ability to work.

Plaintiff also argued that he had migraine headaches once or twice a day which prohibited him from performing any gainful employment. However, the ALJ considered Plaintiff's headaches and stated that there was not enough evidence to support the frequency and degree of headaches alleged. Tr. 20. Furthermore, Dr. Heck expressed his professional opinion that the headaches were not a medically-determinable impairment. Tr. 164. Additionally, Plaintiff's brief physical therapy sessions in 2004 revealed that his occurrence of headaches had reduced to twice a week. Tr. 216.

Plaintiff complained that the ALJ did not address how Plaintiff was supposed to attend physical therapy while maintaining employment. The evidence in the record is that Plaintiff was not

12

attending physical therapy, and the ALJ did not make an allowance in his residual functional capacity for physical therapy.  Instead of following the recommendation of the state agency physician that Plaintiff could perform medium work, the ALJ noted, among other things that Plaintiff underwent a brief course of physical therapy and determined that Plaintiff could perform light work.  Tr. 21. Thus, it is clear the ALJ did not feel it necessary to provide a limitation, beyond reducing his work level to light, that Plaintiff needed time to attend physical therapy, and this conclusion is supported by the record, since Plaintiff did not attend physical therapy with any frequency and was not attending physical therapy at the time of the hearing.

Furthermore, Plaintiff disputes that the evidence establishes that he can perform work that includes duties such as: lifting/carrying twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight hour day, and sitting six hours in an eight hour workday, and performing his past relevant work. However, the doctor who performed the residual capacity assessment determined that Plaintiff could not only stand/walk/sit six hours in an eight hour workday, but that he could lift fifty pounds occasionally, twenty-five pounds frequently. Tr. 157. The ALJ noted the evidence that Plaintiff had sought medical care for his back in 2004 and spent a brief period in physical therapy, as well as the fact that Plaintiff had reported in 2002 that activity worsened his condition. Tr. 21.  Even though Plaintiff's statements are contradictory as to whether activity actually exacerbates his condition, the ALJ determined Plaintiff's RFC should only qualify him for light work, and even lowered the amounts Plaintiff could lift by over half of what was recommended. Tr. 19, 21.

Thus, the ALJ's determination of Plaintiff's residual functional capacity is supported by substantial evidence.

**C.       Did the ALJ Properly Evaluate the Opinion of Plaintiff's Treating Physician?**

Plaintiff argues that the ALJ failed give the treating doctor's opinions the substantial weight they are ordinarily required to receive.  Defendant asserts that the ALJ fully discussed the treating doctor's opinions in his decision, so Plaintiff's argument is without merit.[1]

The Social Security Regulations provide that all medical opinions are to be considered in determining the disability status of a benefits claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b).  Nonetheless, opinions on ultimate issues, such as disability status under the regulations, are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements.  *Id.*  Additionally, the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner" including a claimant's residual functional capacity, which is a finding expressly reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e)(2) and (3).

The regulations break medical source opinions down into three general categories: non-examining, non-treating, and treating. 20 C.F.R. §§ 404.1502, 416.902.  Non-examining sources are those whose assessments are premised solely on a review of medical records.  *Id.*  State agency medical consultants consulted by the ALJ fall into this category.  *Id.*  Non-treating sources are those who have examined the claimant, but who do not have "an ongoing treatment relationship" with same.  *Id.*  This "term includes an acceptable medical source who is a consultative examiner . . . when the consultative examiner is not [a claimant's] treating source."  *Id.*  Finally, medical sources

---

[1]Defendant also argues that the ALJ did not fully develop this argument for judicial review, so there is no reason for the Court to consider the issue.  Although the Court finds Plaintiff's argument without merit, the Court finds it is sufficiently developed and will therefore address it.

who have had an "ongoing treatment relationship" with the claimant are regarded as treating sources.

*Id.*

The Social Security Regulations provide guidelines for the consideration of expert medical opinions of a claimant's treating physician. Under 20 C.F.R. § 404.1527(d)(2), consideration of a treating physician's opinion must be based on:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole, and
> (6) the specialization of the treating physician.

*Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)); *accord Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001); *see also* 20 C.F.R. 416.927(d)(2).  SSR 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. *Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.* In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

*Newton,* 209 F.3d at 456 (emphasis in original).

The ALJ noted that the evidence from a physical examination of Plaintiff and a comparison of the MRIs, supported a conclusion that Plaintiff had a muscloskeletal impairment that had gradually deteriorated.  Tr. 19.  After Plaintiff's surgery, the ALJ discussed the fact that Dr. Cressman, Plaintiff's treating physician, said Plaintiff was "doing very, very well." Tr. 19, Tr. 178. Plaintiff only complained once to Dr. Cressman about re-injuring his back and even then Dr. Cressman concluded that physiotherapy was a sufficient remedy. Tr. 175.  Thus, the ALJ clearly

15

considered Dr. Cressman's opinion, and the ALJ's conclusion was supported by Dr. Cressman's opinion.

Plaintiff claims that the ALJ overlooked the medical evidence that built up in the two years after Plaintiff's surgery.[2]  However, the ALJ also considered in detail the opinion of Dr. Morrison from 2004, which was the only opinion of a treating doctor, other than Dr. Cressman's, after Plaintiff's surgery. Tr. 20.  The ALJ noted that the fact Plaintiff had no new symptoms upon examination in 2004 and Dr. Morrison's prescription for over-the-counter drugs do not support a conclusion that Plaintiff's impairment would keep him from working. Tr. 20.

The Court finds that the ALJ's evaluation of the Plaintiff's treating physicians was based on the proper legal standards.  In addition, the Court finds that the ALJ's evaluation of the treating physicians' opinion is supported by substantial evidence, since the ALJ clearly considered their opinions and his determination was consistent with them.

**D.      Did the ALJ Improperly Discount Plaintiff's Credibility?**

Plaintiff alleges the ALJ did not provide specific reasons for discounting Plaintiff's credibility as required by 20 C.F.R. 404.1529 and SSR 96-7p, so the case should be remanded. Defendant asserts that the ALJ did properly consider the evidence in the record in accordance with 20 C.F.R. §§ 404.1529 and SSR 96-7p.

Although pain in and of itself can be a disabling condition, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir.

_____

[2]The ALJ also discussed Dr. Robison's examination of Plaintiff in 2003, however, Dr. Robison was an examining, not a treating physician, so the Court will not discuss the ALJ's analysis of Dr. Robison's opinion, since Plaintiff is only complaining about the ALJ's evaluation of treating doctor's opinions.

1988).  In order to prove a disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995); 20 C.F.R. § 404.1529 (1997).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Ripley*, 67 F.3d at 556; 20 C.F.R. § 404.1529.  Although the ALJ must consider subjective evidence of pain, it is within his discretion to determine its debilitating nature, and such determinations are entitled to considerable deference.  *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).  The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Policy Interpretation Ruling Titles II and XVI, SSR 96-7p, 1996 WL 374186, at *2.

When assessing the credibility of an individual's statements, the ALJ is required to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

17

In accordance with the requirements of the above Social Security rulings and regulations, in determining the credibility of Plaintiff's subjective complaints of pain, the ALJ considered the entire case record, including the objective medical evidence, the individual's own statements about his symptoms, the factors listed in 20 C.F.R. § 404.1529, statements and other information by treating physicians, and statements and opinions provided by the vocational expert.  Although Plaintiff alleged his disability started in 2001, the ALJ noted that there was no evidence that Plaintiff regularly received medical care during 2001.  *Id.*  The ALJ stated the fact that Plaintiff experienced a sudden increase in pain and the comparison of the MRI from 1999 and 2002 supported a conclusion that Plaintiff had a musculoskeletal impairment that gradually deteriorated.  *Id.*  The ALJ stated that the medical record indicated Plaintiff's symptoms improved substantially after his surgery, so he was not precluded for 12 months as required for a disability finding.  *Id.*  Additionally, the ALJ noted that the Plaintiff's testimony that he felt better when he laid down and kept his feet elevated by sitting contradicted what Plaintiff told Dr. Cressman in November of 2002, because he said he felt better when he was active.  *Id.*  Even though Plaintiff reported increased lower back pain in February 2004, the ALJ noted that Plaintiff demonstrated no new symptomology upon examination and that the examining doctor recommended Plaintiff continue to use over-the-counter Tylenol for his pain, so Plaintiff' reported limitations were not consistent with the record.  *Id.*  The Fifth Circuit has "recognized that an absence of objective factors indicating the existence of severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition – can itself justify the ALJ's conclusion."  *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

Additionally, the ALJ pointed out that Plaintiff testified that he did not receive medical care because of a lack of insurance and also that he had insurance.  Tr. 19-20.  Plaintiff also testified that

he did not seek indigent care and he was denied indigent care.  Tr. 20.  Thus, Plaintiff's testimony was very inconsistent.  The ALJ also noted that comparison of the medical records from November of 2002 to October of 2003 did not show a significant change in his functional abilities.  *Id.*  The ALJ pointed out that there was no objective evidence Plaintiff needed a cane, had the frequency and degree of headaches he alleged, that he had urinary incontinence, or that his work would be more than minimally affected by acid reflux.  Tr. 20-21.  "It must be remembered that '[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'"  *Harrell*, 862 F.2d at 480 (quoting *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983)).  The Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints of pain was based on the proper legal standards. In addition, the Court finds that the ALJ's determination that Plaintiff's pain was not disabling is also supported by substantial evidence.

## VII.  CONCLUSION

The Magistrate Court **AFFIRMS** the final decision of the Commissioner.  A judgment in favor of the Defendant will be entered consistent with this decision.

SIGNED this 7th day of September, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE